IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EBONY JONES,<br>Individually and On Behalf<br>of Others Similarly Situated,<br><br>                                  Plaintiffs,<br><br>v.<br><br>573 LLC, 3471 LLC, 3475 LLC, 3485 LLC,<br>5634 LLC, 577 LLC, PHC ROANOKE LLC,<br>and PEACHTREE RESTAURANT<br>PARTNERS LLC,<br><br>                                  Defendants. | **Civil Action No.** 7:22-CV-00486 |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR SETTLEMENT APPROVAL

      Subject to court approval, Plaintiff Ebony Jones and 573 LLC, 3471 LLC, 3475 LLC, 3485 LLC, 5634 LLC, 577 LLC, PHC ROANOKE LLC, and PEACHTREE RESTAURANT PARTNERS LLC (collectively, "Defendants") (collectively the "Parties"), have settled this wage and hour collective action for $13,775.12. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") settlement because it is a fair and reasonable resolution of a bona fide dispute and is the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

      For the reasons set forth below, the parties respectfully request that the Court enter an order approving the $13,775.12 settlement detailed in the Settlement Agreement (the "Settlement Agreement"). For the Court's convenience, the Settlement Agreement is attached as Exhibit A.

## **PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS**

### I.   Factual Allegations

Plaintiffs alleges she was employed by Defendants as a server at the IHOP restaurant located at 3926 Franklin Rd SW, Roanoke, VA 24014. Plaintiff further alleges that the location was owned by Defendant 573 LLC, a company which was in turned owned and operated by Defendant Peachtree Restaurant Partners llc. Finally, Plaintiff alleges that the remaining Defendants were all IHOP franchisees also owned by Peachtree Restaurant Partners llc. Plaintiff claimed that while employed by Defendants as a server she was paid a tipped rate despite not working in a tipped capacity for enough hours to satisfy the FLSA's tipped employee regulations. She brought minimum and overtime wage claims and contended that she was owed the delta between her tipped rates of $2.13 or $3.20 (overtime rate) an hour and the minimum wage of $7.25 an hour and/or minimum overtime wage of $10.88 an hour for all hours worked. Plaintiff further contended that there existed a group of similarly situated servers employed by Defendants, thus Plaintiff styled this matter as a collective action. Defendants deny, and continue to deny, any and all allegations of violation(s) of law or other wrongdoing and also deny Plaintiff's allegations concerning the viability of any proposed collective.

### II.   Overview of Investigation, Litigation, and Settlement Negotiations

Before filing this lawsuit, Plaintiff's counsel conducted a thorough investigation into the merits of the potential claims and defenses. Plaintiff's counsel focused their investigation and legal research on the underlying merits of the claim, the viability of so-called *tip rate* litigation, and the damages to which the Plaintiff may be entitled, and the likelihood of collective and/or class action certification. Plaintiff's counsel obtained and reviewed documents from the Plaintiff, including pay stubs and researched the Defendants operations. Plaintiff's counsel also conducted

in-depth interviews with the Plaintiff.

On August 24, 2022, Plaintiff filed suit alleging violations of the FLSA. Not long after the Complaint was served, counsel for Defendant contacted Plaintiff's counsel and indicated that Defendant denied the Complaint's allegations. Nevertheless, the parties began shortly thereafter to discuss whether a negotiated resolution was possible and what data was needed to achieve the same.

The Parties subsequently engaged in informal discovery with counsel for Defendant providing Plaintiff's counsel with robust data concerning the Plaintiff's work hours and pay. From that data Plaintiff's counsel was able to calculate Defendants' maximum exposure to Plaintiff. Because the case was filed with just a single Plaintiff, Defendants determined they were interested in resolving the claim of Ms. Jones only. Plaintiff's counsel shared the damages model with the Defendants, who in turn, expressed a willingness to settle Plaintiff's claims for her full claimed damages, inclusive of alleged liquidated damages. Faced with such an offer and with no pending motion for conditional certification, Plaintiff had little reservation in quickly accepting Defendants' proposal. In an effort to reach a holistic settlement and avoid time consuming and expensive litigation concerning Plaintiff's attorneys' fees, the parties were additionally able to reach agreement on a compromise amount with Plaintiff's counsel agreeing to reduce their accrued fees in an effort to resolve the matter.

## SUMMARY OF THE KEY SETTLEMENT TERMS

**The Settlement Amount(s)**

Defendants have agreed to pay a total of $13,775.12 to settle the claims in this action. That amount will be allocated as follows: (i) settlement payment to Plaintiff of $2,962.42, with $1,481.21 allocated to claimed wage loss and $1,481.21 allocated to claimed liquidated damages

3

and (iii) payment to Plaintiff's counsel's a total of $10,812.70 for fees ($10,050.00) and costs ($762.70).

**Release**

The parties have agreed to a release, consistent with the rules for FLSA settlements within this district, that is properly tailored to only release wage and hour claims.

**Denial of Liability**

The settlement acknowledges that the Defendants deny liability in any way to the Plaintiff and the settlement of this matter should in no way be construed as an admission of liability.

## ARGUMENT

**I.      The Settlement Meets the Requirement for Approval of an FLSA Settlement.**

Settlement of an FLSA lawsuit must be approved by the U.S. Department of Labor or a federal district court. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005)). Courts in the Western and Eastern District of Virginia have traditionally taken their direction from the Eleventh Circuit and have held that an FLSA settlement should be approved if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Furthermore, when the parties' settlement, as here, reflects "a reasonable compromise over the issues the court may approve it in order to promote the policy of encouraging settlement of litigation." *Kuntze v. Josh Enters., Inc.*, No. 2:18cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (internal markings omitted) (citing *Lynn Food Stores*, 679 F.2d at 1354).

This settlement represents a good faith compromise of the parties' bona fide dispute of liability and damages under the FLSA. Furthermore, the proposed settlement terms are fair and

reasonable, and the settlement was reached after arms-length negotiation. For these reasons and based on the foregoing, the parties request that the Court approve the Settlement Agreement.

### A.  There is a Bona Fide Dispute over FLSA Provisions.

To merit Court approval, the settlement must revolve a bona fide dispute over FLSA provisions. *See Patel*, 15 F. Supp. 3d at 654 (citing *Lynn Food Stores*, 679 F.2d at 1355). In this action, Plaintiff alleges that she was not paid regular and overtime wages in violation of the FLSA. As the Court has noted, "[a] bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009). Furthermore, Defendants have consistently denied and continue to deny those allegations. The Settlement Agreement contains a provision expressly denying any and all liability to Plaintiff. As such, this settlement represents a good faith compromise of the parties' bona fide dispute regarding the FLSA claims alleged in the Complaint.

### B.  The Settlement is Fair and Reasonable.

"In determining whether a settlement is fair, adequate, and reasonable there is a *strong presumption* in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *LaFleur*, 189 F. Supp. 3d at 593 (emphasis added) (internal markings and citations omitted). Those factors to be considered when assessing whether an agreement is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of the counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975). As detailed below, all factors point toward approval in this case.

### 1. The Extent of Discovery that has Taken Place.

Early on, Defendants informally produced relevant data for the Plaintiff. Specifically, Defendants provided Plaintiff's counsel with Plaintiff's complete pay and time data. Plaintiff's counsel used this data to construct a damages model which allowed the Plaintiff to communicate her estimate of Defendants' maximum exposure. As a result, the parties had all the information that they needed to evaluate the damages at issue and determine whether settlement made legal and/or business sense. Additional discovery certainly could have been sought, but it would not have changed the damages calculation and would only have caused the parties to incur more fees. The extent of this informal discovery thus weighs in favor of approval.

### 2. The Stage of the Proceedings.

Because this lawsuit involves allegations of unpaid regular and overtime wages under the FLSA, there are myriad issues that would have required significant litigation had the matter not settled. Such issues include, but are not limited to, the ongoing validity of the "20% rule" for tipped employees as well as extensive argument on what constitutes work that is tip rate eligible versus ineligible for such treatment. None of this to mention the time and energy that would have gone into collective certification.

If the litigation had progressed, it would have been complex, expensive, and protracted. The Parties would likely have had disputes through factual discovery and certification, and eventually challenged one another in briefing as to both liability and damages. Moreover, either side likely would have appealed any key judgment. This settlement provides 100 cents on the dollar to the Plaintiff now and avoids any risk of a negative ruling down the line. From Defendants' perspective settlement eliminates further exposure to fees and prevents the possibility

of a potential collective action insofar as this remains a single Plaintiff case and Plaintiff's counsel have confirmed that they do not represent any additional servers.

### 3.  The Absence of Fraud or Collusion.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12; *see also Kuntze*, 2019 WL 2179220, at *2. The parties negotiated this settlement at arms-length and the Plaintiff has not compromised her damages. Thus, there is no evidence to outweigh the presumption that no collusion occurred between counsel.

### 4.  The Experience of Plaintiff's Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn*, 528 F.2d at 1173 ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."). Plaintiff's counsel are well-respected lawyers with a breadth of experience in the fields of employment litigation and wage and hour law. They have litigated and are currently litigating a number of small and large overtime cases against public entities and private corporations, including, but not limited to:

> *Rogers et al. v. City of Richmond*, 3:11CV620 (E.D. Va.)
> *Carroll et al. v. County of Henrico,* 3:12CV00105 (E.D. Va.)
> *Devine, et al. v. City of Hampton*, 4:14CV81 (E.D. Va.)
> *Wright, et al. v. City of Roanoke*, 7:18CV210 (W.D. Va.)
> *Lacroix et al., v. City of Portsmouth, Virginia*, 2:13CV533 (E.D. Va.)
> *Slavin et al., v. United States Postal Service*, 3:17CV00134 (E.D. Va.)
> *Milton, et al. v. Quality Eco Technologies, LLC*, 3:20CV43 (E.D. Va.)
> *Yerby, et al. v. City of Richmond*, 3:19CV393 (E.D. Va.)
> *Clinton, et al. v. GEICO*, 2:16CV430 (E.D. Va.)
> *Mendoza, et al. v. Baird Drywall & Acoustic, Inc. et al.*, 7:19-cv-882 (W.D. Va.)
> *Broussard v. Eldor Automotive Powertrain USA* 7:19-cv-0841 (W.D. Va.)
> *Pinon v. Kalyan Plaza, LLC et al.* 7:20-cv-205 (W.D. Va.)

*Sziber v. Dominion Energy, Inc.* 3:20-cv-117 (E.D. Va.)
*Jones v. Harvest Roanoke LLC et al.* 7:22-cv-485 (W.D. Va.)
*Adam et al. v. Negril Incorporated et al.* 4:22-cv-107 (W.D. Va.)
*Clifton v. ACME Therapies, Co.* 4:22-cv-113 (W.D. Va.)

Plaintiff's counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the settlement. Based on Plaintiff's counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour actions, Plaintiff's counsel's opinion is that the settlement is fair, reasonable, and adequate and resolves a bona fide dispute. That opinion, based on extensive knowledge of employment law, is entitled to significant weight.

### 5. The Probability of Plaintiff's Success on the Merits.

With regard to the probability of success on the merits, when evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656. As stated above, recovery in this matter is not guaranteed. Plaintiff faced disputes over whether the Defendants were entitled to take the FLSA's tip credit, the joint employer or integrated enterprise nature of the Defendants, whether liquidated damages or a three-year statute of limitations were appropriate, and whether this action could proceed to trial on a collective action basis. Because Plaintiff faced significant hurdles with respect to her FLSA claims, the probability of success on the merits factor weighs in favor of approval.

### 6. The Amount of the Settlement in Relation to the Potential Recovery.

The settlement fully compensates the Plaintiff for her alleged damages, and she enjoys the benefit of her settlement far sooner than if this matter were to go to trial. Additionally, she also avoids any of the many negative outcomes she might have to endure down the line through litigation, i.e. a failure to win collective/class certification, loss on summary judgment, loss at trial,

or loss on appeal. Consequently, this settlement brings full value and certainty now, as opposed to years from now. The substantial benefit to the Plaintiff is a significant factor weighing in favor of approval of the proposed Settlement Agreement.

**Plaintiff's Attorneys' Fees and Costs.**

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The settlement agreed to by the parties reflects this and rather than engaging in a time consuming and costly fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis v. BT Ams. Inc.*, No. 2:16cv206, 2017 WL 11506967, at *2-3 (E.D. Va. May 10, 2017). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis.[1] *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *LeFluer*, 189 F. Supp. 3d at 593. However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness

---

[1] "The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate." *LeFleur*, 189 F. Supp. 3d at 593 (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

9

of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id*. (citing *Poulin*, 2010 1813497, at *1).

Here, the parties negotiated and agreed that Plaintiff's counsel's attorneys' fees and costs would be discounted slightly to $10,812.70. "In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001)). As explained above, the relief that Plaintiff will receive is complete. Plaintiff could not have done better, and may have done worse, had this matter continued.

## CONCLUSION

This Settlement was reached after continued settlement negotiations. The Parties engaged in analysis of the facts and the data at issue and the Settlement Agreement provides the Plaintiff significant monetary relief. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved.

By:____/s/_____
Zev H. Antell (VSB No. 74634)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel:   (804) 648-4848
Fax:   (804) 237-0413
zev.antell@butlercurwood.com

Brittany M. Haddox (VSB No. 86416)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
brittany@strelkalaw.com
*Counsel for Plaintiff*

*/s/*_____
David I. Klass, Esq. (VSB #78697)
Mary Grace Miller, Esq. (VSB #86368)
Fisher & Phillips LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
E-mail: dklass@fisherphillips.com
E-mail: mgmiller@fisherphillips.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.


\_\_\_\_/s/_____
Zev H. Antell (VSB No. 74634)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel:    (804) 648-4848
Fax:   (804) 237-0413
zev.antell@butlercurwood.com

Brittany M. Haddox (VSB No. 86416)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
brittany@strelkalaw.com
*Counsel for Plaintiffs*